26cr25 LMP/DLM

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>(1) NEKIMA VALDEZ LEVY-ARMSTRONG, a/k/a "Nekima Valdez Levy-Pounds,"<br>(2) CHAUNTYLL LOUISA ALLEN,<br>(3) WILLIAM SCOTT KELLY, a/k/a "DaWokeFarmer,"<br>(4) DON RENALDO LEMON,<br>(5) JEROME DEANGELO RICHARDSON,<br>(6) JAMAEL LYDELL LUNDY,<br>(7) TRAHERN JEEN CREWS,<br>(8) GEORGIA ELLYSE FORT, and<br>(9) IAN DAVIS AUSTIN,<br>Defendants. | Case No.<br>**INDICTMENT**<br>18 U.S.C. § 241<br>18 U.S.C. §§ 248(a)(2), (b)<br>18 U.S.C. § 2(a) |

The Grand Jury charges that:

**<u>INTRODUCTORY ALLEGATIONS</u>**

At all times relevant to this Indictment:

1. The Cities Church ("the Church") is a Christian house of worship located in St. Paul, Minnesota.

2. On the morning of Sunday, January 18, 2026, at approximately 10:30 a.m., the Church's pastor was leading the congregation in a liturgical

SCANNED
JAN 29 2026
U.S. DISTRICT COURT MPLS

service. In that service, the Church's pastor and congregation were then exercising and seeking to exercise the First Amendment right of religious freedom at a place of religious worship, a right that is also protected by a federal statute codified at Title 18, United States Code, Section 248.

3. After the service commenced, a group of approximately 20-40 agitators, including all of the defendants named in this Indictment, entered the Church in a coordinated takeover-style attack and engaged in acts of oppression, intimidation, threats, interference, and physical obstruction alleged herein.

4. As a result of defendants' conduct, the pastor and congregation were forced to terminate the Church's worship service, congregants fled the Church building out of fear for their safety, other congregants took steps to implement an emergency plan, and young children were left to wonder, as one child put it, if their parents were going to die.

**<u>COUNT ONE</u>**

**[18 U.S.C. § 241 — ALL DEFENDANTS]**

**[Conspiracy Against Right of Religious Freedom at Place of Worship]**

5. The allegations set forth above in Paragraphs 1 through 4 of this Indictment are realleged and incorporated herein by reference.

## A. OBJECT OF THE CONSPIRACY

6. Beginning on an unknown date and continuing to on or about January 18, 2026, in the State and District of Minnesota, defendants

NEKIMA VALDEZ LEVY-ARMSTRONG ("ARMSTRONG"),
CHAUNTYLL LOUISA ALLEN ("ALLEN"),
WILLIAM SCOTT KELLY ("KELLY"),
DON RENALDO LEMON ("LEMON"),
JEROME DEANGELO RICHARDSON ("RICHARDSON"),
JAMAEL LYDELL LUNDY ("LUNDY"),
TRAHERN JEEN CREWS ("CREWS"),
GEORGIA ELLYSE FORT ("FORT"), and
IAN DAVIS AUSTIN ("AUSTIN"),

conspired and agreed with one another, and with other persons known and unknown to the Grand Jury, to injure, oppress, threaten, and intimidate multiple persons, including the clergy, staff, and congregants of the Cities Church, in the free exercise and enjoyment of the rights and privileges secured to them by the laws of the United States, and because of such persons having exercised such right, namely, exercise of the First Amendment right of religious freedom at a place of religious worship, as secured by Title 18, United States Code, Section 248(c), all in violation of Title 18, United States Code, Section 241 (Conspiracy Against Rights).

## B. MANNER AND MEANS

7. In order to achieve the object of the conspiracy:

a. Defendants ARMSTRONG and ALLEN, together with other persons unknown to the Grand Jury, organized the operation targeting the Church, which they dubbed "Operation Pullup," and promoted it on the internet via Instagram accounts.

b. All defendants met at a shopping center for a pre-op briefing, during which ARMSTRONG and ALLEN advised other co-conspirators, including defendants KELLY, LEMON, RICHARDSON, LUNDY, CREWS, FORT, and AUSTIN, about the target of their operation (*i.e.*, Cities Church) and provided instruction on how the operation would be conducted once they arrived at the Church. Once at the Church, all of the defendants entered the Church to conduct a takeover-style attack and engaged in various acts in furtherance of the conspiracy.

## C. OVERT ACTS

8. In furtherance of the conspiracy and to accomplish the object thereof, defendants ARMSTRONG, ALLEN, KELLY, LEMON, RICHARDSON, LUNDY, CREWS, FORT, and AUSTIN, together with other persons known and unknown to the Grand Jury, committed various overt acts, including, but not limited to, the following:

Overt Act # 1: On or about January 17, 2026, defendant ARMSTRONG posted a flyer on two Instagram accounts controlled by her, "@nekimal" and "@racialjusticemn," advertising an anti-ICE action dubbed "Operation Pullup,"

telling fellow agitators where to meet to prepare for the operation, and exhorting them to "be ready to mobilize." ("ICE" refers to Immigration and Customs Enforcement.)

Overt Act # 2: On or about January 17, 2026, defendant ALLEN posted a similar flyer on her personal Instagram account, "@chauntyll."

Overt Act # 3: On the morning of January 18, 2026, all of the named defendants gathered with approximately 20-30 other co-conspirators for a pre-operation briefing led by defendants ARMSTRONG and ALLEN at the parking lot of Cub Foods, at 1440 University Avenue W., St Paul, MN 55104.

Overt Act # 4: At the pre-operation briefing, defendants ARMSTRONG and ALLEN advised other co-conspirators, including defendants KELLY, LEMON, RICHARDSON, LUNDY, CREWS, FORT, and AUSTIN, about the target of their operation (*i.e.*, Cities Church) and provided instruction on how the operation would be conducted once they arrived at the Church.

Overt Act # 5: On the morning of January 18, 2026, defendant LEMON began livestreaming on his internet-based show, "TheDonLemonShow," where he explained to his audience that he was in Minnesota with an organization that was gearing up for a "resistance" operation against the Federal Government's immigration policies, and he took steps to maintain operational secrecy by reminding certain co-conspirators to not disclose the target of the

operation and stepped away momentarily so his mic would not accidentally divulge certain portions of the planning session.

Overt Act # 6: During a discussion with defendant ARMSTRONG at the pre-op briefing, (a) defendant LEMON thanked defendant ARMSTRONG for what she was doing and assured her that he was "not saying … what's going on" (*i.e.*, was not disclosing the target of the operation); (b) defendant ARMSTRONG explained that "Operation Pullup" was a "clandestine" operation in which she and other agitators would "show up somewhere that is a key location, [where the targets] don't expect us … , and we disrupt business as usual. That's what we're about to go do right now."; and (c) defendant LEMON said he would see her there.

Overt Act # 7: Before heading to the Church to join his co-conspirators, defendant LEMON advised his livestream audience that, "We're going to head to the operation. Again, we're not going to give any, any of the information away" (*i.e.*, operational details that would disclose where he and his co-conspirators were heading).

Overt Act # 8: At the pre-op briefing, defendant ALLEN (a) led other co-conspirators in chants that they would use at the Church, including, "This is what community looks like" and "ICE out of Minnesota"; (b) urged her co-conspirators that they have a "duty to fight for our freedom" and "a duty to win"; and (c) as the group prepared to head toward the church, directed her co-

conspirators to "stay bumper-to-bumper, make sure everybody gets through the light" and confirmed that everyone "ha[d] the address."

Overt Act # 9: At the pre-op briefing, defendant ARMSTRONG provided instruction and operational guidance to her co-conspirators, including the following: (a) the "first wave" of agitators should enter the Church essentially in an undercover capacity and position themselves around the Church sanctuary; (b) they should not sit together and should not wear "anything that is activist-identifying"; and (c) those who had "anything activism identifying" should wait and come in with the second wave.

Overt Act # 10: Continuing on the morning of January 18, 2026, all of the defendants got in vehicles and traveled with their co-conspirators to the Church to engage in the planned takeover-style operation.

Overt Act # 11: While enroute to the Church, defendant RICHARDSON told defendant LEMON that they had to "catch up" to the others, and defendant LEMON replied, "Let's go, catch up"; and, because he was still livestreaming, LEMON instructed RICHARDSON and an unidentified male, "Don't give anything away" (*i.e.*, don't divulge information about the operation), and advised his audience, "We can't say too much. We don't want to give it up."

Overt Act # 12: Continuing on the morning of January 18, 2026, all of the defendants, together with other co-conspirators, entered the Church

sanctuary, with the first wave positioning themselves among the congregants and the second wave, led by defendants ARMSTRONG and ALLEN, commencing the disruptive takeover operation, in which the first wave of agitators then actively joined.

Overt Act # 13: As the pastor was beginning his sermon, defendant ARMSTRONG interrupted the service with loud declarations about the Church harboring a "Director of ICE" and indicating that the time for Judgment had come, and other co-conspirators immediately joined in by yelling and blowing whistles in a takeover attack on the Church, all of which quickly caused the situation in the Church to become chaotic, menacing, and traumatizing to Church members.

Overt Act # 14: While inside the Church, defendants ARMSTRONG, ALLEN, KELLY, RICHARDSON, LUNDY, CREWS, and AUSTIN and others led and/or joined with their co-conspirators in various chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back!," while gesturing in an aggressive and hostile manner, which congregants and the pastor perceived as threats of violence and a potential prelude to a mass shooting.

Overt Act # 15: While inside the Church, defendants ARMSTRONG, ALLEN, KELLY, LEMON, RICHARDSON, LUNDY, CREWS, FORT, and AUSTIN oppressed, threatened, and intimidated the Church's congregants and pastors by physically occupying most of the main aisle and rows of chairs

near the front of the Church, engaging in menacing and threatening behavior, (for some) chanting and yelling loudly at the pastor and congregants, and/or physically obstructing them as they attempted to exit and/or move about within the Church.

Overt Act # 16: While inside the Church, defendant AUSTIN stood with other agitators in and around the main aisles in the Church to intimidate the Church members and obstruct and interfere with their freedom of movement, approached the pastor and congregants in a menacing manner, and, near the end of the operation, loudly berated the pastor with questions about Christian nationalism and Christians wanting to have their faith be the law of the land.

Overt Act # 17: While inside the Church, defendant LUNDY personally participated in the disruptive takeover operation with other defendants by standing in the main aisle with the others and contributing to the physical obstruction and intimidation of the congregants, participating loudly in some of the chants (*e.g.*, one saying that the targeted ICE agent must be "Out! Out!"), and punching his fist in the air.

Overt Act # 18: While inside the Church, defendant CREWS personally participated in the disruptive takeover operation with other defendants by standing in and around the main aisle with the others and contributing to the physical obstruction and intimidation of the congregants and participating in some of the chants.

Overt Act # 19: While inside the Church, defendant KELLY (a) disrupted the service by chanting, "This ain't God's house. This is the house of the devil."; (b) approached one female congregant, who was with two young children, and demanded to know in a hostile manner why she was not involved in and supportive of the takeover operation; and (c) screamed "Nazi" in congregants' faces and asked child congregants, "Do you know your parents are Nazis? They're going to burn in hell."

Overt Act # 20: Defendant LEMON told his livestream audience about congregants leaving the Church and about a "young man" who LEMON could see was "frightened," "scared," and "crying," and LEMON observed that the congregants' reactions were understandable because the experience was "traumatic and uncomfortable," which he said was the purpose.

Overt Act # 21: As the operation continued, defendant LEMON acknowledged the nature of it by expressing surprise that the police hadn't yet arrived at the Church, and admitted knowing that "the whole point of [the operation] is to disrupt."

Overt Act # 22: While the takeover operation was underway, defendant LEMON asked defendant ARMSTRONG, "Who is the person that we should talk to? Is there a pastor or something?," and she pointed toward the front of the Church but noted the pastor "might have run away."

Overt Act # 23: With other co-conspirators standing nearby, defendants LEMON, RICHARDSON, and FORT approached the pastor and largely surrounded him (to his front and both sides), stood in close proximity to the pastor in an attempt to oppress and intimidate him, and physically obstructed his freedom of movement while LEMON peppered him with questions to promote the operation's message.

Overt Act # 24: While talking with the pastor, defendant LEMON stood so close to the pastor that LEMON caused the pastor's right hand to graze LEMON, who then admonished the pastor, "Please don't push me."

Overt Act # 25: Although the pastor told defendant LEMON and the others to leave the Church, defendant LEMON and the other defendants ignored the pastor's request and did not immediately leave the Church.

Overt Act # 26: After causing most of the congregants to flee, some of the defendants and other agitators engaged in a chant proclaiming, "Who shut this down? We shut this down!"

Overt Act # 27: As one congregant reported to responding police officers, some of the agitators blocked the stairs leading to the Church's childcare area and made it difficult and hazardous for parents to retrieve their children, causing some to take alternative routes in or around the Church.

Overt Act # 28: At one point, defendant LEMON posted himself at the main door of the Church, where he confronted some congregants and physically

obstructed them as they tried to exit the Church building to challenge them with "facts" about U.S. immigration policy.

Overt Act # 29: As a minivan full of children was preparing to depart from the Church, defendant KELLY walked in front of the minivan and angrily yelled at the occupants, and defendants ARMSTRONG and FORT stood in front of the minivan while FORT interviewed ARMSTRONG.

## COUNT TWO

**[18 U.S.C. § 248(a)(2),(b), § 2(a) — ALL DEFENDANTS]**

**[Injure, Intimidate, and Interfere with Exercise of Right of Religious Freedom at Place of Worship]**

9. The allegations set forth above in Paragraphs 1 through 8 of this Indictment are realleged and incorporated herein by reference.

10. On or about January 18, 2026, in the State and District of Minnesota, defendants

NEKIMA VALDEZ LEVY-ARMSTRONG,
CHAUNTYLL LOUISA ALLEN,
WILLIAM SCOTT KELLY,
DON RENALDO LEMON,
JEROME DEANGELO RICHARDSON,
JAMAEL LYDELL LUNDY,
TRAHERN JEEN CREWS,
GEORGIA ELLYSE FORT, and
IAN DAVIS AUSTIN,

each aiding and abetting one another, and together with other persons known and unknown to the Grand Jury, by use of force, threat of force, and physical obstruction, intentionally injured, intimidated, and interfered with, and attempted to injure, intimidate, and interfere with multiple persons, including the Church's congregants, clergy, and staff, who were then lawfully exercising and seeking to exercise the First Amendment right of religious freedom at a place of religious worship, which conduct resulted in bodily injury to one of the congregants.

All in violation of Title 18, United States Code, Sections 248(a)(2), (b), and 2(a).

A TRUE BILL

____________________________
FOREPERSON

PAMELA J. BONDI
Attorney General

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
Civil Rights Division

____________________________
ORLANDO B. SONZA
Counsel
Civil Rights Division
U.S. Department of Justice

DANIEL N. ROSEN
United States Attorney